**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

JERENIA PIERSON,                   :
                                   :
            Plaintiff,             :         Civil Action No.:   07-530 (RMU)
                                   :
      v.                           :         Re Document No.:  32
                                   :
WASHINGTON METROPOLITAN            :
AREA TRANSIT AUTHORITY             :
                                   :
            Defendant.             :

<u>**MEMORANDUM OPINION**</u>

**GRANTING IN PART AND DENYING IN PART
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment.

The plaintiff claims, *inter alia*, that the defendant, the Washington Metropolitan Area Transit

Authority ("WMATA"), retaliated against her for making a sexual harassment complaint by: (1)

terminating her employment, (2) not rehiring her and (3) sending creditors to harass her for

overpaid vacation benefits.  The defendant moves for summary judgment with respect to the

plaintiff's retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e-2(a)(1).  It argues that summary judgment is appropriate because the plaintiff

failed to exhaust her administrative remedies and because the defendant's actions were justified

by a legitimate, non-discriminatory reason.

Because the plaintiff failed to exhaust her administrative remedies with respect to her

overpaid vacation benefits claim, the court grants in part the defendant's motion for summary

judgment.  On the other hand, because the plaintiff did exhaust her administrative remedies for

her non-rehire claim, the court denies the defendant's motion for summary judgment on that

claim.  Finally, because a reasonable juror could infer that the defendant's legitimate, non-discriminatory reason for terminating the plaintiff was pretext for retaliation, the court also denies the defendant's motion for summary judgment as to the plaintiff's termination claim.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In March 2005, WMATA hired the plaintiff, a lesbian, as a temporary employee.  *Id.* ¶¶ 11, 15; Pl.'s Opp'n, Ex. 7; Def.'s Reply, Ex. 1 at 2.  On June 27, 2005, the defendant assigned the plaintiff to WMATA's revenue collection facility for a two-month assignment.  Def.'s Mot. at 2.  The plaintiff was instructed "to shadow" another employee, Betty Baines, "to learn how to do the job."  *Id.*

On June 28, 2005, Baines allegedly invited the plaintiff to dinner at a restaurant frequented by the lesbian community.  Am. Compl. ¶¶ 22-23.  Despite the plaintiff's protestations, Baines purportedly telephoned a friend and said, "in a sexual way, 'I got this friend I'm bringing down there after work.'"  *Id.* ¶ 24.  The plaintiff ultimately declined Baines' invitation, and maintains that she angered Baines by not accompanying her to dinner that evening.  *Id.* ¶¶ 23, 26.

The following day, on June 29, 2005, the plaintiff claims that Baines approached her and approximately five other co-workers, and exclaimed, "that damn dike over there looking like a man."  *Id.* ¶¶ 26-27.  The plaintiff believes that Baines' comments "were loud enough so that [the p]laintiff and others in the area could hear her."  *Id*.  The plaintiff also states that Baines referred to her as "slow," and stated that she could not type, "stamp cards" or use the telephone correctly.  *Id.* ¶ 28.  That same day, the plaintiff lodged a verbal complaint with her supervisor, Marlene Dottelis, explaining that Baines had sexually harassed and intimidated her.  *Id.* ¶ 29.

2

Shortly thereafter, the plaintiff followed up her oral communication with a written letter to Dottelis. Pl.'s Opp'n at 3. The letter stated that "[o]n June 29, 2005, [a]t 3:25 p.m., [the plaintiff] brought to [Dottelis'] attention a problem [that the plaintiff] was experiencing on the job with a co-worker, Ms. Betty B[aines]." Def.'s Mot., Ex. C. The letter also noted that the plaintiff felt Dottelis had not "take[n] the matter very seriously because [the plaintiff] had to return to work to face a hostile work environment." *Id.* The plaintiff also expressed in her letter that Baines had spent more time instructing another worker about her job duties than Baines had spent explaining to the plaintiff her job duties. *Id.* The plaintiff indicated on the letter that the supervisor of the section that the plaintiff and Baines worked in, Angel Cabrera, was intended as a "carbon copy" or "cc" recipient. *Id.*

On July 1, 2005, the plaintiff met with Dottelis, Dottelis' subordinate and Cabrera. Am. Compl. ¶ 31; Def.'s Mot. at 3 & Cabrera Aff. ¶ 2. According to the plaintiff, she was telling the group that Baines had "sexually harassed and subjected [her] to hostile treatment," when Cabrera interrupted her and stated that he and Baines "had been friends for twenty-six years." Am. Compl. ¶¶ 32-33. The plaintiff represents that Cabrera then terminated her "on the spot." *Id.* ¶ 32. That same day, the plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge of discrimination with the Alexandria Office of Human Rights against the defendant, claiming that she "was terminated in retaliation for having protested what [she] believed to be discrimination." Pl.'s Opp'n, Ex. 7.

As part of the EEOC investigation, the defendant submitted its "Position Statement," [1] and on January 4, 2007, the plaintiff responded with her "Rebuttal" letter. *Id.* at 18-19.

---

[1]    The record does not indicate when the defendant submitted its "Position Statement" to the EEOC for its investigation.

According to the plaintiff's letter, the defendant's collection agency contacted the plaintiff after her termination, seeking reimbursement for $299.60 for overpaid vacation pay.  Am. Compl. ¶ 34.  The plaintiff alleges that the defendant "threatened to take legal action against her and to report her to the credit reporting bureaus."  Pl.'s Opp'n, Ex. 8.  On May 23, 2007, the plaintiff and the defendant settled the dispute for $150.00.  Am. Compl., Ex. B.

In addition to the overpaid vacation benefits dispute, the plaintiff stated in her Rebuttal letter that, since her termination, she had been denied employment opportunities with the defendant.  Pl.'s Opp'n, Ex. 8.  According to the plaintiff's complaint, she had sought employment in other divisions within WMATA for which she was qualified but "was never contacted or interviewed for any of the positions."  Am. Compl. ¶ 37.  The Separation Personnel Action Report that was issued upon the plaintiff's termination also read "Do not re-hire."  Pl.'s Opp'n at 15 & Ex. 4.

On March 19, 2007, the plaintiff filed her initial complaint in this court.  Def.'s Mot. at 1.  On August 12, 2010, the plaintiff filed an amended complaint, claiming that the defendant had violated Title VII, Alexandria City Code § 12-4-5 and D.C. Code § 2-1402.11(a).  *See generally* Am. Compl.  As relevant here, she claims that the defendant retaliated against her by (1) terminating her, (2) not rehiring her and (3) pursuing her for overpaid vacation benefits.  *Id*. ¶¶ 5-6.

On March 18, 2011, the defendant filed a motion seeking summary judgment as to the plaintiff's retaliation claims brought under Title VII.  *See generally* Def.'s Mot.  With the defendant's motion now ripe for consideration, the court turns to the parties' arguments and the applicable legal standards.

### III.  ANALYSIS

### A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

(D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose

of the summary judgment device, which is to weed out those cases insufficiently meritorious to

warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B.  The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment

### 1.  The Court Grants the Defendant's Motion for Summary Judgment with Respect to the Overpaid Vacation Benefits Claim, But Denies the Defendant's Motion for Summary Judgment Regarding the Plaintiff's Non-Rehire Claim

### a.  Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are

(1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to"

those claims in the administrative complaint and (2) claims for which the plaintiff exhausted

administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v.*

*Servicemaster Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  It is the defendant's burden to prove

by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies.

*Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of

administrative remedies is an affirmative defense, the defendant bears the burden of pleading and

proving it").  Meager, conclusory allegations that the plaintiff failed to exhaust his administrative

remedies will not satisfy the defendant's burden.  *Id.* at 12 (noting that a mere assertion of failure

to exhaust administrative remedies without more is "clearly inadequate under prevailing

regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies.  *Rann v. Chao*,

346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's

ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-

13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

**b. The Plaintiff Failed to Exhaust Her Administrative Remedies for Her Overpaid Vacation Benefits Retaliation Claim, But Successfully Exhausted Her Administrative Remedies Related to Her Non-Rehire Retaliation Claim**

The defendant asserts that the plaintiff's retaliation claims based on her non-rehire and on her overpaid vacation benefits are barred because the plaintiff failed to exhaust her administrative remedies.  Def.'s Mot. at 7-9.  More specifically, the defendant argues that the plaintiff never raised these issues in her EEOC complaint, nor in "any amended or subsequent charge."  *Id.* at 7; Def.'s Reply at 4.  The plaintiff counters that she exhausted her administrative remedies for her retaliation claims because the claims are "within the scope of the investigation of the [EEOC] [c]harge," and because the defendant received notice of her retaliation claims through her Rebuttal letter.  Pl.'s Opp'n at 18-19.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court held that "[d]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  536 U.S. 101, 113 (2002).  "[E]ach retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" and "each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Id.*  As such, to exhaust administrative remedies, "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period – 180 or 300 days."  *Id.* at 113-14.

Since the Supreme Court's ruling in *Morgan*, several courts in this jurisdiction have held that a plaintiff is required to separately exhaust his or her administrative remedies for every discrete act of discrimination or retaliation, regardless of whether the claims are "like or

7

reasonably related" to claims contained in the administrative complaint.  *See, e.g.*, *Lewis*, 535 F. Supp. 2d at 7 (citing cases).  Other members of this court, however, have adopted a narrower reading of *Morgan* in the context of retaliation claims.  *See id.* (citing *Hazel v. Wash. Metro. Area Transit Auth.*, 2006 WL 3623693, at *8 (D.D.C. Dec. 4, 2006)).  Relying on a post-*Morgan* decision in the Eighth Circuit, these courts have held that separate exhaustion is not required for acts of retaliation occurring after the filing of an administrative complaint that would have come within the "scope of any investigation that reasonably could have been expected to result from [the] initial [administrative] charge of discrimination."  *Hazel*, 2006 WL 3623693, at *8 (citing *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 674 (8th Cir. 2006)); *see also Thomas v. Vilsack*, 718 F. Supp. 2d 106, 121 (D.D.C. 2010); *Hairston v. Tapella*, 664 F. Supp. 2d 106, 115 (D.D.C. 2009).

Although the Circuit has expressly declined to address this issue, *Weber v. Battista*, 494 F.3d 179, 184 (D.C. Cir. 2007), this court has previously adopted the reasoning of *Hazel* and *Wedow*.  *See, e.g. Jones v. Bernanke*, 685 F. Supp. 2d 31, 38 (D.D.C. 2010).  Specifically, the court has agreed that if the allegations underlying the plaintiff's retaliation claims "were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature," a plaintiff's failure to separately exhaust his or her administrative remedies will not serve as a bar to suit, as those claims would have come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint.  *Smith-Thompson v. Rodriguez*, 2009 WL 3069666, at *11 (D.D.C. Sept. 28, 2009) (quoting *Wedow*, 442 F.3d at 673) (internal citation omitted); *see also Hairston v. Tapella*, 2009 WL 3379008, at *7 (D.D.C. Oct. 21, 2009) (observing that "[a] more recent view is that acts of alleged retaliation occurring after an EEOC charge is filed need not be separately exhausted

where they necessarily would have come within the 'scope of any investigation that reasonably could have been expected to result'" from the administrative complaint) (quoting *Hazel*, 2006 WL 3623693, at *8)); *cf. Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 304 (4th Cir. 2009) (vacating summary judgment for the employer because the plaintiff's retaliation claim was related to the allegations asserted in the administrative complaint, and noting that *Morgan* does not require a different result); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (holding after *Morgan* that the court's jurisdiction extends to "all claims of discrimination that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge").

 With these principles in mind, the court turns to the plaintiff's proposed retaliation claims premised on her overtime vacation benefits and her non-rehire.  First, concerning the overpaid vacation benefits claim, the court notes that although the plaintiff filed an EEOC charge concerning her termination, she did not amend her charge to include allegations that the defendant was harassing her for the repayment of overpaid vacation benefits.  Def.'s Mot. at 7-9.  Nor does the overpaid vacation benefits claim relate to or "grow out of" the plaintiff's initial EEOC charge concerning her termination because it is not reasonable that the EEOC investigation stemming from the plaintiff's initial EEOC charge would have investigated a dispute concerning overpaid vacation benefits.  *See Jones*, 685 F. Supp. 2d at 37-38 (noting that the "claim grow[ing] out of the claims asserted in the administrative complaint [ ] likely would have come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint"); *Thomas*, 718 F. Supp. 2d at 121 (indicating that "a court could not entertain additional incidents omitted from an administrative complaint unless those incidents fell within the scope of any investigation that reasonably could have been

expected to result from the initial charge of discrimination") (internal citations and quotation marks omitted).  Because the plaintiff's overpaid vacation benefits claim does not grow out of her termination claim, the court concludes that she failed to exhaust her administrative remedies. Accordingly, the court grants the defendant's motion for summary judgment for the plaintiff's overpaid vacation benefits claim.

In contrast to the overpaid vacation benefits claim, the plaintiff's non-rehire retaliation claim specifically related to and grew out of her initial EEOC charge.  The plaintiff's Separation Personnel Action Report documenting her termination explicitly states, "Do not re-hire."  *See* Pl.'s Opp'n at 15 & Ex. 4.  Thus, the plaintiff's ineligibility for rehire would have "come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint."  *See Jones*, 685 F. Supp. 2d at 37-38; *Smith-Thompson*, 657 F. Supp. 2d at 137.  Because the plaintiff exhausted her administrative remedies with respect to her termination claim and because her non-rehire claim would have been investigated by the EEOC as part of the termination claim, the court concludes that the plaintiff's non-rehire retaliation claim is not barred for failure to exhaust her administrative remedies.

## 2.  The Court Denies the Defendant's Motion for Summary Judgment with Respect to the Plaintiff's Termination Retaliation Claim

### a.  Legal Standard for a Title VII Retaliation Claim

When the defendant contesting a retaliation claim that is brought under Title VII presents a legitimate, non-discriminatory reason for its actions, the district court must resolve only one question to resolve a motion for summary judgment: "whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by showing that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's

proffered explanation is unworthy of credence.'" *Jones v. Bernake*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). The court must determine if the plaintiff showed "*both* that the reason was false, *and* that . . . [retaliation] was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

The court must consider whether the jury could infer retaliation from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Id*. (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002)); *see also Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)).  The plaintiff need not present evidence in each of these categories to avoid summary judgment.  *Aka*, 156 F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances.  *Id.* at 1291.

**b. A Reasonable Juror Could Infer That the Defendant's Actions Were Retaliatory**

Assuming *arguendo* that the defendant has set forth a legitimate, non-discriminatory reason for terminating the plaintiff's employment,[2] the court turns to whether a reasonable juror could infer retaliation from, *inter alia*, the plaintiff's prima facie case. *See Weber*, 494 F.3d at 186. The defendant argues that the plaintiff cannot establish a prima facie case for her termination retaliation claim because "Mr. Cabrera or WMATA in general" did not know that the plaintiff had even engaged in a protected activity. Def.'s Mot. at 5; *see also* Def.'s Reply at 1-2 (citing *Talavera v. Shah*, 638 F.3d 303, 313 (D.C. Cir. 2011)). The defendant insists that Cabrera was not "aware of any complaint by [the p]laintiff of purported sexual harassment," and that he believed "the conflict between [the p]laintiff and Ms. Baines was simply a work-related dispute." Def.'s Reply at 1-2. The plaintiff, on the other hand, maintains that she has advanced sufficient evidence from which a reasonable juror could infer that Cabrera knew of the plaintiff's sexual harassment complaint. Pl.'s Opp'n at 11, 15.

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S.

---

[2] The defendant's proffered reason for dismissing the plaintiff is that "WMATA had the right to give additional training to the other new employee, who was hired as a regular or permanent employee." Def.'s Reply 3. The defendant suggests that that the plaintiff was fired because she could not understand that less resources would be devoted to her due to her temporary status. *See id.* As a preliminary note, the court views with skepticism the defendant's proffered legitimate, non-discriminatory reason for firing the plaintiff. It seems highly unlikely to the court that an employer would resort to termination solely because an employee misunderstood the amount of training that he or she was likely to receive. Nevertheless, the court need not address this issue because even accepting this legitimate, non-discriminatory reason as valid, the defendant's motion for summary judgment as to the termination claim still fails for the reasons discussed above.

53, 67-69 (2006); *Jones*, 557 F.3d at 677.  The strength of the plaintiff's prima facie case,

especially the existence of a causal connection, can be a significant factor in his attempt to rebut

the defendant's legitimate non-retaliatory reason for the adverse action.  *See Aka*, 156 F.3d at

1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may

be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F.

Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff could not establish pretext because

"she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-

6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a

causal connection).

     Here, the plaintiff engaged in a protected activity by filing a sexual harassment complaint

with her employer.  *See Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 77 (D.D.C. 2007) (indicating

that "no magic words are required" to mark an exchange as protected activity, but rather that the

plaintiff must only allege some kind of unlawful discrimination (internal citations and quotations

marks omitted)); *Rhodes v. Napolitano*, 656 F. Supp. 2d 174, 185 n.9 (D.D.C. 2009) (observing

that "[a]lthough a union complaint is not 'categorically protected' under Title VII's anti-

retaliation provision," it may be considered protected activity if it alleges discrimination or

another practice made unlawful under Title VII (internal citations and quotation marks omitted)).

Similarly, it is clear that the plaintiff's termination constitutes an adverse employment action.

*Baloch v. Kempthorne*, 550 F.3d 1191, 1197 (D.C. Cir. 2008).  Thus, the court turns to the final

step in the prima facie analysis, which requires the court to inquire as to whether the plaintiff

demonstrated that a causal connection existed between the protected activity and the materially

adverse employment action.  *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67-69; *Jones*,

557 F.3d at 677.

The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all"). Here, the plaintiff complained on June 29, 2005 of the sexual harassment and intimidation she endured and only two days later the defendant fired the plaintiff. Am. Compl. ¶¶ 31-33. The proximity of these events supports that a causal connection existed between the plaintiff's protected activity and her termination. *See Regan v. Grill Concepts-D.C., Inc.*, 338 F. Supp. 2d 131, 138 (D.D.C. 2004) (determining that three days between the protected activity and the plaintiff's termination was sufficiently close to infer causation).

Additionally, the plaintiff has offered sufficient evidence from which a reasonable juror could infer that Cabrera likely knew that the plaintiff had engaged in a protected activity. At the summary judgment stage, the plaintiff "need only offer circumstantial evidence that could reasonably support an inference" that the defendant knew of the protected activity. *Talavera*, 638 F.3d at 313. The plaintiff has demonstrated that on the same day that the incident with Baines occurred, she provided her supervisor, Dottelis, with an oral and written report of the alleged sexual harassment. Pl.'s Opp'n at 12-14 & Ex. 3. Significantly, Cabrera was specifically "cc'ed" at the bottom of the letter. *See id.* Given this letter and Cabrera's managerial position, the court agrees with the plaintiff that a reasonable juror could conclude "that Ms. [Dottelis] would have relayed to Mr. Cabrera" the plaintiff's oral and written complaints because Cabrera

14

oversaw "the section where both [the] [p]laintiff and Ms. Baines worked." Def.'s Mot. at 3. From these proffered facts, the court concludes that the plaintiff has advanced sufficient evidence from which a reasonable juror could infer that the defendant had knowledge of the plaintiff's protected activity, and therefore, that a causal connection existed between her termination and her protected activity. *Talavera*, 638 F.3d at 313 (stating that a plaintiff seeking to rebut the defendant's legitimate, non-discriminatory reason "need only offer circumstantial evidence that could reasonably support an inference" of knowledge, and acknowledging that, in making this assessment, "context matters"); *see also Caudle v. District of Columbia*, 2011 U.S. Dist. LEXIS 92590, at *23-25 (D.D.C. 2011) (determining that evidence of an anonymous email sent by the plaintiff to his supervisors in which he complained about racial discrimination, along with evidence that it was widely believed by the supervisors that the plaintiff was behind the anonymous email, constituted a sufficient evidentiary basis from which to infer an employer's knowledge of the plaintiff's protected activity).

In sum, the plaintiff advances sufficient evidence to establish a prima facie case for retaliation and from which a reasonable juror could infer that the defendant's legitimate non-discriminatory reason for terminating her employment is a pretext for retaliation. *See Cones v. Shalala*, 199 F.3d 512, 521-522 (D.C. Cir. 2000) (concluding that the denial of a defendant's motion for summary judgment was appropriate because the plaintiff's evidence in support of his prima facie case was enough for a reasonable jury to conclude that the defendant's proffered legitimate, non-discriminatory reason was pretext for retaliation). Accordingly, the court denies the defendant's motion for summary judgment with respect to the plaintiff's termination claim.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's

motion for summary judgment.  An Order consistent with this Memorandum Opinion is

separately and contemporaneously issued this 4th day of November, 2011.

RICARDO M. URBINA
United States District Judge
